[Cite as *Breen v. Total Quality Logistics*, 2017-Ohio-439.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John Breen, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 16AP-3 |
| v. | : | (M.C. No. 2014 CVF 8306) |
| Total Quality Logistics, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

---

# D E C I S I O N

### Rendered on February 7, 2017

---

**On brief:** *Breen Law*, and *John E. Breen*, for appellant. **Argued:** *John E. Breen*.

**On brief:** *Lindhorst & Dreidame*, *Barry F. Fagel* and *James L. O'Connell*, for appellee. **Argued:** *Barry F. Fagel*.

---

APPEAL from the Franklin County Municipal Court

KLATT, J.

{¶ 1} Plaintiff-appellant, John Breen, appeals from a judgment of the Franklin County Municipal Court granting sanctions for his frivolous conduct in filing a complaint against defendant-appellee, Total Quality Logistics ("TQL"). For the following reasons, we affirm that judgment.

## I. Factual and Procedural Background

{¶ 2} TQL is a company mainly engaged in the logistics business, i.e., brokering freight shipments throughout the United States. In 2009 or 2010, TQL hired a law firm, The Law Offices of John Alden ("the firm"), to handle its collections litigation. TQL and the firm entered into a contingency agreement whereby the firm would be paid a third of

any money TQL recovered (plus its expenses) in these matters. Breen worked as an independent contractor for the firm and represented TQL in many of its collections cases. The firm paid Breen half of any recovery it received as payment for his services.

{¶ 3} In 2011, Breen represented TQL in a matter against C&L Logistics ("C&L"), a Florida-based contract carrier. TQL alleged that C&L damaged cargo while in shipment and otherwise breached its agreement with TQL resulting in a loss of $55,776.40. Breen engaged in settlement discussions with C&L on behalf of TQL. C&L initially offered TQL $10,000 to settle the case. C&L later raised the settlement offer to $25,000 and then to $30,000. TQL's corporate counsel, Chris Brown, rejected these settlement offers. After Brown rejected the $30,000 offer, Breen withdrew as counsel for TQL in the matter. Neither the firm nor Breen received any compensation from TQL in connection with Breen's representation of TQL in this matter. TQL ultimately recovered nothing from C&L.

{¶ 4} On March 17, 2014, Breen filed a complaint against TQL asserting claims for breach of contract and quantum meruit arising from Breen's legal representation of TQL. Ultimately, both Breen and TQL filed motions for summary judgment. Breen argued that he was entitled to judgment as a matter of law because he provided legal services to TQL and obtained a settlement offer of $30,000 in the matter, which he argued was a recovery whether or not TQL accepted the offer. Breen also argued that TQL and Brown acted in bad faith by rejecting the $30,000 offer in the C&L litigation. Breen alleged that Brown rejected the offer because Brown believed that Breen had not done enough work to get paid out of the settlement. (Aug. 18, 2014 Breen Dep. at 78, 107.) He also accused Brown of not acting in the company's best interest by rejecting the offer. *Id.* at 102. TQL argued that under its agreement with the firm, the firm was entitled to a contingent fee only if TQL received a monetary recovery. Therefore, Breen could not recover because TQL did not accept the $30,000 offer and never obtained a recovery in the C&L matter. TQL also argued that Breen had no claim against it because its agreement was with the firm, not Breen.

{¶ 5} The trial court granted summary judgment to TQL and denied it to Breen. The court concluded that Breen could not recover as a matter of law because TQL did not accept the $30,000 offer, and therefore, did not recover anything in the C&L matter. The

court further concluded that Breen's speculation as to TQL's rationale for rejecting the $30,000 offer was insufficient to demonstrate it acted in bad faith.  Breen did not appeal the trial court's summary judgment decision.

{¶ 6}    Subsequently, TQL filed a motion for sanctions based on its contention that Breen's complaint constituted frivolous conduct pursuant to R.C. 2323.51(B) and Civ.R. 11.  In the motion, TQL argued that Breen should have known that he could not succeed on his claim and that the filing of this action, and continued prosecution of it even after being made aware of the substantive flaws in his claims, amounted to frivolous conduct.[1] Breen filed his own motion for sanctions as a result of TQL's filing.  The trial court set a hearing on TQL's motion but concluded that Breen's motion did not demonstrate arguable merit to warrant a hearing and denied it without a hearing.  At the hearing, TQL's attorney testified to the events that preceded the hearing and to the billable hours he spent defending Breen's suit.  The trial court granted TQL's motion for sanctions for frivolous conduct and awarded it $15,000 in attorney fees as a result.

## II. Breen's Appeal

{¶ 7}    Breen appeals the trial court's decision granting sanctions and assigns the following errors:

> 1. The lower court erred and abused its discretion in holding that an attorney who sues a former client for non payment of legal fees, based upon breach of contract and/or quantum meruit, which are not paid due to the bad faith and other misconduct of the client, engages in frivolous conduct pursuant to R.C. 2323.51.
>
> 2. The lower court abused its discretion in holding that an attorney acts frivolously in seeking payments of unpaid legal fees, when the client refuses the highest and maximum settlement possible, offers conflicting excuses and pretexts for doing so, demands that counsel reduce its percentage fees as a condition of acceptance and then transfers the case to its own local counsel.
>
> 3. The lower court abused its discretion in disregarding the uncontroverted evidence of record – which was unopposed— showing that defendant's newly hired in house counsel, Chris

---

[1] Counsel for TQL wrote Breen a letter two months after he filed his complaint detailing the legal flaws with his claim, including the flaws relied on by the trial court in granting TQL summary judgment.

Brown, who the court observed acted "foolishly," did not also act in bad faith, in refusing a settlement that was the highest and best attainable, and then demanded to handle the case his way with another attorney and obtained a recovery of zero, and then used his own bad judgment as a basis to refuse payment to plaintiff.

4. The lower court erred in conducting proceedings pursuant to R.C. 2323.51, by essentially misunderstanding the procedure to be a perfunctory submittal of legal bills.

5. The lower court erred in failing to reach any findings of fact or conclusions of law relative to each alleged instance of frivolous conduct.

6. The lower court erred in admitting general time sheets, without supporting substantiation, when the sheets contained admitted errors and hearsay, and without expert testimony to substantiate the reasonableness of the fees.

## A. Statutory Provisions for Frivolous Conduct

{¶ 8} R.C. 2323.51(A)(2)(a) defines frivolous conduct as conduct that satisfies any of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶ 9}  "Conduct" includes "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action." R.C. 2323.51(A)(1).

{¶ 10}  For a trial court to award sanctions under this statute, it must first conduct a hearing and allow the parties and counsel of record involved to present any relevant evidence, determine that the conduct involved was frivolous and that a party was adversely affected by it, and then determine the amount of the award to be made. R.C. 2323.51(B)(2).  As relevant here, the amount awarded constitutes reasonable attorney fees incurred in connection with the civil action. R.C. 2323.51(B)(1).

## B. Standard of Review

{¶ 11}  No single standard of review applies in R.C. 2323.51 cases. *Judd v. Meszaros*, 10th Dist. No. 10AP-1189, 2011-Ohio-4983, ¶ 18, citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51 (10th Dist.1996).  The standard an appellate court uses depends upon whether the trial court's determination resulted from factual findings or a legal analysis. *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 18.  R.C. 2323.51(A)(2)(i), (iii), and (iv) call on a court to make factual determinations.  Review of a trial court's factual determinations is subject to deference and will not be disturbed where the record contains competent, credible evidence to support the trial court's findings. *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 35, citing *Judd* at ¶ 18.  By contrast, a determination under R.C. 2323.51(A)(2)(ii) that conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis and is, therefore, subject to de novo review. *Brisco* at ¶ 35, citing *Judd* at ¶ 19, and *Stuller v. Price*, 10th Dist. No. 03AP-30, 2003-Ohio-6826, ¶ 14.  Finally, where a trial court finds frivolous conduct, the decision whether to assess a penalty lies within the sound discretion of the trial court. *Judd* at ¶ 19.

{¶ 12}  In its motion for sanctions, TQL argued that Breen's conduct in filing and continuing to prosecute his claim was frivolous pursuant to R.C. 2323.51(A)(2)(ii) and (iii).  At the hearing on the motion, TQL's counsel also argued, pursuant to R.C.

2323.51(A)(2)(i), that Breen filed the suit merely to harass or maliciously injure Brown, characterizing the suit as a "personal vendetta" against Brown. (Oct. 13, 2015 Mot. Hearing at 16.) The trial court found frivolous conduct without making any factual findings or conclusions of law in support of its finding.

{¶ 13} We now address Breen's assignments of error, although we do so out of order for analytical clarity.

## C. Breen's Fifth Assignment of Error—The Absence of Factual Findings

{¶ 14} In his fifth assignment of error, Breen points out that the trial court did not make any factual findings in its decision granting TQL's motion. This omission, however, does not constitute error. First, Breen did not request factual findings or conclusions of law. *Law Office of Natalie F. Grubb v. Bolan*, 11th Dist. No. 2010-G-2965, 2011-Ohio-4302, ¶ 24 ("Absent a request in accordance with Civ.R. 52, however, a trial court need not issue findings and conclusions."). Second, while such findings would assist this court in conducting a review of the trial court's decision, R.C. 2323.51 does not require the trial court to make factual findings in order to grant a motion for sanctions. *Patton v. Ditmyer*, 4th Dist. No. 05CA12, 2006-Ohio-7107, ¶ 91 (rejecting argument that trial court's failure to make written findings of fact require reversal of frivolous conduct findings). Absent findings of fact, we will affirm if there is some basis in the record for doing so. *Bolan* at ¶ 26.

{¶ 15} Accordingly we overrule Breen's fifth assignment of error.

## D. Breen's First, Second, and Third Assignments of Error—Did he Engage in Frivolous Conduct?

{¶ 16} We consider these assignments of error together because they each challenge the trial court's ultimate conclusion that Breen engaged in frivolous conduct. Specifically, Breen argues that his complaint sought recovery for his unpaid legal services under two well-recognized causes of actions: breach of contract and quantum meruit and, therefore, the filing of the complaint cannot be frivolous conduct. We disagree.

{¶ 17} We interpret Breen's argument as contesting the frivolousness of his conduct under R.C. 2323.51(A)(2)(a)(ii), which defines frivolous conduct to include the filing of a claim which is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be

supported by a good faith argument for the establishment of new law. Under this section, the test to determine frivolous conduct is whether no reasonable attorney would have brought the action in light of the existing law. *Bennett v. Martin*, 10th Dist. No. 13AP-99, 2013-Ohio-5445, ¶ 18; *Bell* at ¶ 17, citing *Groves v. Groves*, 10th Dist. No. 09AP-1107, 2010-Ohio-4515, ¶ 17, *overruled on other grounds*, *Jacobson v. Kaforey*, __Ohio St.__, 2016-Ohio-8434. In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim. *Bennett* citing *Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, ¶ 36 (1st Dist). Our review of this determination is de novo. *Brisco.*

{¶ 18} Both of Breen's causes of action fail as a matter of law. First, Breen cannot recover under a breach of contract theory because he did not have a contract with TQL. TQL's contract for legal services was with the firm. *Spoerke v. Abruzzo*, 11th Dist. No. 2013-L-093, 2014-Ohio-1362, ¶ 29, quoting *Ireton v. JTD Realty Invests., LLC*, 12th Dist. No. CA2010-04-023, 2011-Ohio-670, ¶ 38 ("The existence of an enforceable contract is a prerequisite to a claim for breach of contract."); *Federman v. Christ Hosp.*, 1st Dist. No. C-120484, 2013-Ohio-5507, ¶ 14 (affirming dismissal of breach of contract claim where no contract existed). Additionally, even when a contingent fee agreement is in effect at the time of an attorney's discharge, a discharged attorney recovers on the basis of quantum meruit, not pursuant to the terms of the agreement. *Fox & Associates Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 72 (1989); *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 573 (1994); *Zunshine v. Cott*, 10th Dist. No. 08AP-347, 2009-Ohio-439, ¶ 15; *Brancatelli v. Soltesiz*, 11th Dist. No. 2009-L-10, 2009-Ohio-6861, ¶ 23. Thus, Breen cannot as a matter of law recover under a breach of contract theory.

{¶ 19} Second, Breen also cannot recover under a theory of quantum meruit. When an attorney representing a client pursuant to a contingency fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency. *Reid* at paragraph two of the syllabus; *Renner, Otto, Boisselle & Sklar, L.L.P. v. Estate of Siegel,* 8th Dist. No. 101861, 2015-Ohio-1839, ¶ 26. A discharged attorney cannot recover if the client recovers nothing. *Id.*, citing *Doellman v. Midfirst Credit Union, Inc.,* 12th Dist. No. CA2006-06-

074, 2007-Ohio-5902, ¶ 23; *Reid*.  Here, since TQL recovered nothing in the C&L litigation, Breen is not entitled to recovery under quantum meruit.  *Taylor v. Geer*, 10th Dist. No. 00AP-159 (Dec. 21, 2000); *Hawthorne v. Benton Ridge Tel. Co.*, 10th Dist. No. 99AP-1476 (Nov. 9, 2000).

{¶ 20} Breen argues that TQL recovered nothing only because Brown acted in bad faith by rejecting the $30,000 offer.  However, it is solely within the client's discretion whether to accept or reject a settlement offer.  *Bernard v. Moretti*, 34 Ohio App.3d 317, 319 (10th Dist.1987).  *See also Michael D. Tully, Co., L.P.A. v. Dollney*, 42 Ohio App.3d 138, 140 (9th Dist.1987) (noting that clients are free to reject any settlement offers).  While our decision in *Bernard* does note that there was no evidence of bad faith in the client's motive to reject a settlement offer, that case involved a breach of contract action, which is not available to Breen in this case.[2]  In an action for quantum meruit, this court has indicated that the only circumstance that would allow for recovery in this factual situation is where the attorney could demonstrate fraud or collusion.  *Hawthorne*, citing *Paxton v. Dietz*, 10th Dist. No. 84AP-972 (May 28, 1985).  Breen has not made nor even alleged such a demonstration.

{¶ 21} In light of this existing relevant law, Breen could not recover against TQL. Thus, we conclude that no reasonable attorney would have brought this action and that the filing of the complaint herein constitutes frivolous conduct as defined in R.C. 2323.51(A)(2)(a)(ii).  Accordingly, we overrule Breen's first, second, and third assignments of error.

### E. Breen's Fourth and Sixth Assignments of Error—The Award of Attorney Fees

{¶ 22} We address these assignments of error together because they both challenge the evidence supporting the trial court's award of attorney fees.  Breen first argues that the trial court erred by admitting the monthly billing sheets presented by TQL's attorney because they were hearsay.  We disagree.

---

[2] Indeed, the *Bernard* case was written in 1987 before the Supreme Court of Ohio's decisions that quantum meruit, not breach of contract, is the proper vehicle for these types of claims. *Roberts v. Hutton*, 152 Ohio App.3d 412, 2003-Ohio-1650, ¶ 25-36 (10th Dist.) (noting that the Supreme Court of Ohio's decisions in *Fox* and *Reid* overruled several precedents by limiting a discharged attorney to a quantum meruit recovery).

{¶ 23} The trial court admitted the billing documents pursuant to Evid.R. 803(6), which allows for the admission of records kept in the ordinary course of business. That rule provides that the hearsay rule does not exclude a document made at or near the time by, or from information transmitted by, a person with knowledge, if the document is kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the document, all as shown by the testimony of the custodian or other qualified witness. *State Farm Mut. Auto. Ins. Co. v. Anders Ins. Co.*, 197 Ohio App.3d 22, 2012-Ohio-824, ¶ 12 (10th Dist.), citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 171. The business-records exception is based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy. *Ohio Receivables, LLC v. Dallariva*, 10th Dist. No. 11AP-951, 2012-Ohio-3165, ¶ 17. TQL's attorney testified to all of these foundational requirements and, therefore, the trial court did not err by admitting the billing sheets. (Mot. Hearing at 23-24, 38.)

{¶ 24} Breen further argues that counsel should have also presented supporting time slips, payment records, ledgers, or cover letters with the billing sheets. We disagree. Breen has not provided any support for such a requirement. Nor are we aware of such a requirement.

{¶ 25} Breen also argues that there was no evidence indicating the reasonableness of the attorney fees. Again, we disagree. TQL's attorney testified at the hearing that his hourly rate and the time expended in this action were both fair and reasonable. (Mot. Hearing at 18.) He also submitted monthly itemized billing statements and testified that the time he spent on this case was "reasonable and necessary to both defend this case, to obtain the outcome that we obtained and, in addition, to bring this motion for sanctions and to defend against his motion for sanctions." *Id.* at 21. While expert testimony may be presented to address this issue, we have never found such testimony to be necessary in order to support a finding that attorney fees were reasonable. *Hadden Co., L.P.A. v. Zweier*, 10th Dist. No. 15AP-210, 2016-Ohio-2733, ¶ 23-25 (attorneys' own testimony regarding reasonableness of fees charged was sufficient to support award). *See also*

*Tipton v. Directory Concepts, Inc.*, 5th Dist. No. 13CA61, 2014-Ohio-1215, ¶ 17-19 (no requirement of expert testimony to determine reasonableness of fees); *Grove v. Gamma Ctr.*, 3d Dist. No. 9-12-41, 2013-Ohio-1734, ¶ 26-32 (same). Thus, the itemized statements, along with TQL's attorney's testimony, are sufficient evidence from which the trial court could find that his fees were reasonable. *All Climate Heating & Cooling v. Zee Properties, Inc.*, 10th Dist. 01AP-784 (Apr. 25, 2002) (itemized bills in conjunction with attorney's own testimony was sufficient to support award of fees).

{¶ 26} Last, Breen's related arguments about the bills, such as discrepancies among bills, reductions in some bills and the vagueness of some billing entries, all go to the weight of the evidence supporting the award and not the admissibility of that evidence. The trial court reviewed the evidence and found that it supported an award of attorney fees. That decision is supported by competent and credible evidence and, as such, is not against the manifest weight of the evidence. *Hawkins v. Miller*, 11th Dist. No. 2011-L-036, 2011-Ohio-6005, ¶ 30 (rejecting manifest weight argument upon a finding of competent and credible evidence to support fee award).

{¶ 27} For all of these reasons, we overrule Breen's fourth and sixth assignments of error.

### III. Conclusion

{¶ 28} Having overruled Breen's six assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BROWN, J., concurs.
BRUNNER, J., dissents.